# O'Brien *v.* The State.

### *Indictment for Selling Liquor without License.*

1. *Two grand juries at same term of court.*—A general statutory provision authorizes any court of general criminal jurisdiction to summon a special grand jury, to investigate an indictable offense committed during the term, and after the regular grand jury has been discharged (Code, § 4317); and the act establishing the City Court of Anniston empowers the presiding judge to order the drawing and summoning of grand jurors "whenever he shall deem it expedient to do so" (Sess. Acts 1888-9, p. 564, § 10); but neither of these statutory provisions, nor any other, gives the judge of that court authority to organize two successive grand juries, with general powers, at one and the same term.

FROM the City Court of Anniston,
Tried before the Hon. B. F. CASSADY.

Indictment for retailing liquor without license, and contrary to law. Motion to quash, and plea in abatement, on account of defects in grand jury. Motion overruled, and demurrer sustained to plea.

KELLY & SMITH, and JNO. H. CALDWELL, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—The act to establish the City Court of Anniston was approved February 25, 1889.—Sess. Acts, 564. The court has two regular terms in each year; commencing the first Monday in April, and the first Monday in October, each to continue until the business is disposed of. The statute contains another clause, declaring that the court "shall continue open until thirty days before the first day of the next term thereafter;" so that the court is kept open, in law, if not in fact, ten months in the year. Another provision of the statute authorizes temporary adjournments of the court during the term, and still another provides for special terms. Construing all these provisions together, it would seem that, during the five months of the regular terms, there can be only temporary adjournment, and that the power to order a special term must be limited to the thirty days immediately preceding the regular terms.

There was a motion in the court below to quash the indict-

ment, on the alleged ground that it was not found or preferred by a lawfully constituted grand jury. There was a plea in abatement, rested on the same ground. Each of these defenses was disallowed, and this raises the most important question before us.

The facts are as follows : At the April term, 1890, and on the 14th day of April, a grand jury was organized for said court, of which one James R. Draper was appointed foreman, and sworn as such. It is not shown how long this grand jury remained in session, nor when it was discharged. On May 10, 1890, during the same April term, the presiding judge made an order for drawing, summoning and impanelling another grand jury, to serve during that term. Following is a copy of the order : "The judge of this court deeming it expedient, it is hereby ordered by the judge of this court, that the jury commission of this county at the May term, to-wit, 12th day of May, 1890, be and are hereby required to draw, according to law, eighteen (18) competent persons, qualified as the law directs, to serve as grand jurors for the City Court of Anniston at its present April term, 1890 ; also, two juries of twelve competent men each, to serve as petit jurors for said court, in strict compliance with section ten (10) of an act creating the City Court of Anniston."

It will be noted that this order was not made under section 4317 of the Code of 1886. That section applies to all courts of general criminal jurisdiction, and can be put in exercise only "when any indictable offense is committed during the session of the court, and after the grand jury has been discharged." The recitals in, and express purpose of the order we are considering, prove it was not made under that statute.

Under the order copied above, a second grand jury was organized for the said April term, with F. M. Hight as foreman. This organization was perfected June 23, 1890 ; and on July 1, 1890, this second grand jury returned into court this indictment, indorsed "a true bill," under which the defendant in this case was put on trial and convicted.

Section 10 of the act "to establish the City Court of Anniston," relates to juries, grand and petit, to serve in said Court. Its language is : " Whenever the judge of this court shall deem it expedient to do so, he may, by an order entered on the minutes of this court, a copy of which shall be served upon each member of the jury commission of Calhoun county, require said jury commission, at the next meeting of the Commissioners Court held thereafter, or earlier if he shall so direct, to draw such number of grand and petit jurors as said judge may deem necessary," &c. Under this section, and specially

[O'Brien v. The State.]

under the phrase, " whenever the judge of this court shall deem it expedient to do so," it is contended that more than one regular grand jury can be organized for the same term whenever the presiding judge shall " deem it expedient to do so."

The grand jury has been an arm and adjunct of criminal administration, in every State composing this Union, ever since we have had existence as an independent people. It is much older than our government. We have all been familiar with its workings in this State, ever since we were admitted to the privileges of statehood. Yet, it is not believed that the attempt was ever before made to organize successively two grand juries with general powers, at any one term of any court. There are, perhaps, many and strong reasons why such power should not be exercised. We will not state them. In the absence of express legislative authority, we will not suppose a radical departure from a custom so ancient was intended.

Our interpretation of the statute in question differs from that placed on it by the trial court. The City Court of Anniston is clothed with large and varied jurisdiction and powers. It has equity jurisdiction, commensurate with the chancellors, and common-law jurisdiction, commensurate with the Circuit Courts. And a petit jury is no part of the machinery in the common-law trial of civil causes, nor in the trial of misdemeanors, unless demanded. Hence, there might be terms of the court at which there would be no need of a jury, grand or petit; or, at least, the legislature may have thought such occurrence not impossible.

A further reason : The law governing Circuit Courts contemplates the organization of the grand jury at the opening of the term. Such is the practice. The City Court of Anniston might elect to devote the early days or weeks of the terms to chancery causes, and to common-law trials in which no jury was demanded. Hence, it might be desirable not to have a grand jury until a later week of the term. This may have induced the legislature to relieve the City Court of the duty of organizing the grand jury during the first week, as Circuit Courts do, and to put it within the court's discretion to have the juries at such time as he might deem expedient. These are mere conjectures as to the motive of the legislature in employing the language found in the statute.

Whatever may have been the intention of the legislature, we are unwilling to so interpret the language employed, as to authorize the successive organization of two regular grand

juries, with general powers, at one and the same term.  The indictment should have been quashed.

Reversed and remanded.